UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Stephen J. Stanley, Jr.,                            Case No. 3:19-cv-640

           Plaintiff

      v.                                        MEMORANDUM OPINION
                                                 AND ORDER

FCA US, LLC, et al.,

           Defendants

## I.     INTRODUCTION

On March 22, 2019, Plaintiff Stephen J. Stanley, Jr. filed this FMLA action. (Doc. No. 1). Defendant FCA US, LLC filed a motion for judgment on the pleadings, (Doc. No. 10), and Defendant Sedgwick Claims Management Services, Inc. filed a motion to dismiss. (Doc. No. 11). In response, Stanley filed memoranda in opposition, (Doc. Nos. 20 & 21), as well as a motion to amend the complaint. (Doc. No. 22). FCA and Sedgwick each replied in support of their motions, (Doc. Nos. 23 & 24), and together filed a memorandum in opposition to the proposed amendment. (Doc. No. 25). Stanley replied in support of his motion to amend. (Doc. No. 30).

## II.     BACKGROUND

Plaintiff Steven J. Stanley, Jr. began his employment with Defendant FCA US, LLC and its Chrysler predecessors on May 20, 1996. (Doc. No. 1 at 2; Doc. No. 22-2 at 2). There, he worked at least 1,250 hours in the twelve months preceding the events described below. (*Id.*).

In February 2018, Stanley notified FCA of his request for FMLA leave due to a serious health condition. (Doc. No. 8-1). Pursuant to an arrangement in which Defendant Sedgwick Claims Management Services, Inc. handles FMLA matters for FCA, Sedgwick sent Stanley a letter on

February 8, 2018, notifying Stanley of the requisite procedure to become eligible for FMLA leave. (Doc. No. 1 at 2; Doc. No. 8-1; Doc. No. 22-2 at 2-3). Specifically, Sedgwick explained that to be eligible for FMLA leave, Stanley was required to submit sufficient medical certification to support his request by February 26, 2018, "absent extenuating circumstances." (Doc. No. 8-1 at 4). In the mailing, Sedgwick enclosed the certification form to be completed by Stanley's physician. (*Id.* at 7-9).

Stanley claims he did not receive this mailing until the day it was due – February 26, 2018.[1] (Doc. No. 1 at 3; Doc. No. 22-2 at 3). At this time, Stanley claims he could not timely obtain the medical certification because the physician's office was closed. (*Id.*). But Stanley alleges he phoned Sedgwick, who promised him of an extension to produce the necessary certification. (*Id.*). The next day – February 27, 2018 – Stanley's physician completed and faxed the certification form to Sedgwick. (Doc. No. 1 at 3; Doc. No. 8-2; Doc. No. 21-2; Doc. No. 22-2 at 3). The same day, Sedgwick sent Stanley a letter denying his FMLA leave request because the certification was not received "within the required timeframe." (Doc. No. 21-1).

By the time Stanley's FMLA leave was denied, he had already taken two days off due to the serious medical condition for which he was seeking FMLA leave – February 19 and 26, 2018. (Doc. No. 1 at 3; Doc. No. 22-2 at 3). Because his FMLA coverage was denied, these absences were not excused. Instead, on March 12, 2018, Stanley was suspended without pay for 33 days for missing these two days. (*Id.*).

After he was suspended, Stanley reapplied for FMLA leave for the same condition. In support of the second claim, Stanley's physician resubmitted the previous certification form with some amendments. (Doc. No. 8-3). The physician made no changes to his previous opinion that

---

[1] But Stanley dated the enclosed authorization form, which he also signed, as February 22, 2018. (Doc. No. 8-2 at 4).

2

Stanley would be incapacitated on an "intermittent basis" of approximately two to three days three times per month because of his condition. (*Id.*). Instead, he merely added specific dates of incapacity and made one notable amendment: checking "Yes" rather than "No" in response to the question: "Is the patient unable to perform his/her essential job functions due to the condition." (*Compare* Doc. Nos. 8-2 & 21-2 *with* Doc. No. 8-3). Based upon the second certification, Stanley was certified to take FMLA leave "March 07, 2018 through May 31, 2018 for the following frequency and duration: [ ] 3 episode(s)per 1 Month(s) with each episode lasting up to 3 Day(s)." (Doc. No. 8-4 at 3).

Although the approval letter from Sedgwick is dated March 22, 2018, Stanley claims he did not know the status of his FMLA application on May 11, 2018. (Doc. No. 1 at 3; Doc. No. 22-2 at 4). On this day, Stanley alleges he needed to take a day off because of his FMLA-eligible condition. (*Id.*). Because he allegedly did not know his FMLA leave had been approved, Stanley classified this absence as a "personal day." (*Id.*). But, due to his current stage of the attendance policy, he was not permitted to take a personal day. (Doc. No. 22-2 at 4). Therefore, this absence resulted in his termination. (Doc. No. 1 at 4; Doc. No. 22-2 at 4).

Stanley brings this FMLA interference action now, asserting his first application was wrongfully denied. Stanley alleges that, because that application was wrongfully denied, he incurred two unexcused absences in February, resulting in 33 days without pay and placement on the stage of the FCA absence policy which permitted no personal days.

### III.  STANDARD

While "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend should be denied as futile if the proposed amendment would not "withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

3

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 570 (2007)). That is, while the *factual* allegations, taken as true, need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Ultimately, the question is whether the plaintiff has stated sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Rule 12(c) motions for judgment on the pleadings are subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

## IV. DISCUSSION

When Stanley initially filed this action, he asserted only an FMLA interference claim against each Defendant. (Doc. No. 1). In the Proposed Amended Complaint, Stanley sought to add claims of civil conspiracy, civil aiding and abetting, and tortious interference. (Doc. No. 22-2). Stanley now concedes the claim of civil aiding and abetting is not viable under Ohio law. (Doc. No. 30 at 8). Therefore, before me now is whether Stanley has stated a plausible claim of FMLA interference, civil conspiracy, or tortious interference.

### A. FMLA Interference

Under the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1). To state an FMLA interference claim, Stanley must assert facts to show:

> (1) he is an eligible employee, (2) the defendant is an employer as defined under the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee gave the employer notice of his intention to take leave, and (5) the employer denied the employee FMLA benefits to which he was entitled.

4

*Tennial v. United Parcel Service, Inc.*, 840 F.3d 292, 308 (6th Cir. 2012). Sedgwick disputes the second element, while FCA disputes the third and fifth.

    **1.    Sedgwick**

Sedgwick contends it cannot be liable because it is not Stanley's "employer" under the FMLA. The FMLA defines "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). The definition also includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I).

Because "[t]he FMLA itself is silent about the issue of joint employment," FCA would generally be the only party liable here as Stanley's employer. *Grace v. USCAR*, 521 F.3d 655, 663 (6th Cir. 2008). But the Department of Labor has instructed that an additional, separate entity may also be considered an "employer" if a "joint employment" relationship exists. *Id.* (citing 29 C.F.R. § 825.104(c)(1)).

Sedgwick alleges it is merely a third-party claims administrator, not a "joint employer." The Sixth Circuit has yet to consider whether such a third-party claims administrator is an employer under the FMLA. But the Department of Labor did contemplate such a third-party when defining the "joint employment" relationship, stating,

> A type of company that is often called a Professional Employer Organization (PEO) contracts with client employers to perform administrative functions such as payroll, benefits, regulatory paperwork, and updating employment policies. The determination of whether a PEO is a joint employer also turns on the economic realities of the situation and must be based upon all the facts and circumstances. A PEO does not enter into a joint employment relationship with the employees of its client companies when it merely performs such administrative functions. On the other hand, if in a particular fact situation, a PEO has the right to hire, fire, assign, or direct and control the client's employees, or benefits from the work that the employees perform, such rights may lead to a determination that the PEO would be a joint employer with the client employer, depending upon all the facts and circumstances.

29 C.F.R. § 825.106(b)(2).

Here, Stanley claims Sedgwick "was empowered to perform more than purely administrative functions on behalf of FCA with respect to employees['] utilization of FMLA leave" and "handled" Stanley's own FMLA leave. (Doc. No. 22-2 at 2-3). But Stanley fails to identify any of these "more than purely administrative functions." Although Stanley claims additional detail is not required as he alleges Sedgwick "handled" the FMLA leave, (Doc. No. 30 at 5-6), I disagree. Without more, Stanley's allegation is merely a threadbare conclusory statement.

Because Stanley fails to plead any facts to indicate Sedgwick had the right to control his employment in some manner, I must conclude Sedgwick was not a joint employer and dismiss the FMLA interference claim against it. This holding is consistent with those of my colleagues in this Circuit and across the country who have confronted this issue. *See, e.g., Priddy v. Moses H. Cone Mem'l Hosp. Operating Corp.*, No.1:18CV405, 2019 WL 1244087, at *4 (M.D.N.C. Mar. 18, 2019) ("FMLA regulations have excluded third-party administrators such as Matrix from being considered an 'employer' under the FMLA.") (citing 29 C.F.R. § 825.106(b)(2) & *Shoemaker v. Conagra Foods, Inc.*, No. 2:14-CV-153, 2015 WL 418271, at *3-*4 (E.D. Tenn. Feb. 2, 2015)); *Chanicka v. JetBlue Airways Corp.*, 243 F. Supp.3d 356, 363 (E.D.N.Y. 2017); *Zolner v. U.S. Bank Nat'l Ass'n*, No. 4:15-cv-00048, 2015 WL 7758543, at *4 (W.D. Ky. Dec. 1, 2015) (citing cases).

**2.     FCA**

FCA claims Stanley was not entitled to FMLA leave for the February absences because the requisite certification was not timely received. (Doc. No. 10-1 at 7 n. 3). Alternatively, FCA argues the content of the certification would not have established Stanley was entitled to FMLA leave even if it had been timely received.[2]

---

[2] FCA also argues in both its motion for summary judgment and reply in support that any claim related to Stanley's ultimate termination must be dismissed because that day was designated as a

As to the issue of timeliness, it is well-settled that "[f]ailure to timely provide a medical certification for which an employer has properly asked will generally preclude an employee's FMLA-interference claim." *Kinds v. Ohio Bell Tel. Co.*, 724 F.3d 648, 652 (6th Cir. 2013) (citing *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 567 (6th Cir. 2005)). But in the Proposed Amended Complaint, Stanley alleges he was "promised an extension of time to produce the medical certification." (Doc. No. 22-2 at 3). At this stage in the litigation, taking the facts of the Complaint as true, I must conclude Stanley did not fail to timely submit the medical certification because the deadline to do so was extended. Therefore, tardiness alone is not a basis for dismissal.

Remaining is FCA's argument that the certification provided did not establish Stanley was entitled to FMLA leave. Specifically, FCA argues the physician's answer to Question 9 of the certification form is dispositive. In this question the physician was asked, "Is the patient unable to perform his/her essential job functions due to the condition[?]" (Doc. Nos. 8-2 & 21-2). The physician checked, "No." (*Id.*). Because of this, FCA asserts the form did not establish Stanley's "serious health condition [made him] unable to perform the functions of [his] position" as required for entitlement to FMLA leave. 29 U.S.C. § 2612(a)(1)(D).

In response, Stanley contends the answer to this question alone is an insufficient basis to deny him benefits because the remainder of the form establishes that he did require intermittent leave because of his serious medical condition. Due to the discrepancy between the prescribed leave and the answer to Question 9, Stanley asserts the certification was not "sufficient."

---

"personal day," not an FMLA absence. (Doc. No. 10-1 at 9-12; Doc. No. 24 at 4-5). As clarified by Stanley in his opposition, the termination does not give rise to a separate claim. (Doc. No. 21 at 5). Instead, Stanley asserts that but for the allegedly wrongful denial in February, taking a "personal day" would not have resulted in his termination because he would not have been at the same extreme stage of the attendance policy. As such, the termination merely raises a question of damages. At this stage in the litigation, I do not find it necessary to adjudicate this question.

FMLA regulations require that if an employer requires certification, that certification must be "complete and sufficient." 29 C.F.R. § 825.305(c). "A certification is considered insufficient if the employer receives a complete certification, but the information provided is vague, ambiguous, or non-responsive." *Id.* If the employer finds the certification to be insufficient, it must notify the employee and "state in writing what additional information is necessary to make the certification … sufficient." *Id.* The employee is then granted seven days to cure the deficiency. *Id.*

In this case, there is no dispute that the physician denied Stanley was "unable to perform his/her essential job functions due to the condition." (Doc. Nos. 8-2 & 21-2). But, in "Part B: Amount of Leave Needed," the physician stated Stanley would be incapacitated on an "intermittent basis," requiring absences of two to three days three times a month due to his condition. (*Id.*). Because the physician did prescribe intermittent leave to accommodate Stanley's serious health condition, this is not a "negative certification." *See, e.g., Nawrocki v. United Methodist Ret. Cmtys.*, 174 F. App'x 334, 338 (6th Cir. 2006) (describing a "negative certification" as one which affirms the applicant has a serious medical condition but states that condition would not make it necessary for the employee to be absent from work). Instead, the conflict between the need for leave and the finding that Stanley was able to perform the essential functions of his job results in an ambiguous certification.[3] Therefore, the certification was insufficient, and FCA should have given Stanley a chance to cure the deficiency.

In sum, FCA's argument that Stanley was not entitled to FMLA leave due to the contents of the certification is unavailing. While the argument regarding tardiness would otherwise be successful, Stanley stated in the Proposed Amended Complaint that he was granted a verbal

---

[3] Seemingly contradicting his own argument, Stanley "does not concede that the February 27, 2018 certification was ambiguous." Nevertheless, I find the certification to be ambiguous and, therefore, insufficient.

8

extension of the deadline. Because this statement was not made in the initial Complaint and is material to the success of the claim, I find amending the Complaint to include this statement is not futile and grant Stanley's motion to amend this aspect of his claim.

**B.     Civil Conspiracy**

"'Civil conspiracy' has been defined as 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Kenty v. Transam. Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995) (quoting *LeFort v. Century 21-Maitland Realty Co.*, 512 N.E.2d 640, 645 (Ohio 1987)). To establish a civil conspiracy claim, Stanley must first show FCA and Sedgwick maliciously committed "[a]n underlying unlawful act." *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998). That is, Stanley must show they acted with "'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'" *Id.* (quoting *Pickle v. Seinehart*, 166 N.E.2d 227, 229 (Ohio 1960)).

Here, Stanley blankly asserts FCA and Sedgwick "maliciously agreed and combined to terminate [him] from his employment" and "[a]cting upon their unlawful agreement, Defendants fired [him]." (Doc. No. 22-2 at 5). At the outset, I will note that FCA's action in terminating Stanley was not unlawful on its own. Rather, the conceivably unlawful act underlying this civil conspiracy claim was denying Stanley's first FMLA application for untimeliness after he had allegedly been promised an extension of the deadline to submit certification. Therefore, Stanley must state facts to allege Sedgwick and FCA did this maliciously to injure him.

"Although conditions of a person's mind may be alleged generally, … the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012) (quotations omitted). Here, Stanley generally asserts FCA and Sedgwick acted

with malice.  But he states no facts to suggest Sedgwick denied his application for untimeliness purposefully so that he could be disciplined.  Even if he had stated such facts, still absent are any facts to suggest FCA conspired with Sedgwick to deny Stanley's FMLA application in this manner.  Ultimately, Stanley fails to suggest Sedgwick and FCA maliciously combined to deny Stanley's FMLA application for the purpose of disciplining him.  Therefore, the Proposed Amended Complaint fails to state a civil conspiracy claim and amending the Complaint to add this claim would be futile.

**C.    Tortious Interference**

"Tortious interference with an employment relationship occurs when one party to the relationship is induced to terminate the relationship by the malicious acts of a third person who is not a party to the relationship at issue." *Tessmer v. Nationwide Life Ins. Co.*, No. 98AP-1278, 1999 WL 771013, at *6 (Ohio Ct. App. Sept. 30, 1999) (citing *Condon v. Body, Vickers & Daniels*, 649 N.E.2d 1259, 1265 (Ohio Ct. App. 1994)).  To state a claim of tortious interference with a business relationship, Stanley must allege facts to show the following elements:

> 1) the existence of an employment relationship between plaintiff and the employer; 2) the defendant was aware of this relationship; 3) the defendant intentionally interfered with this relationship; and 4) the plaintiff was injured as a proximate result of the defendant's acts.

*Lennon v. Cuyahoga Cnty. Juv. Ct.*, No. 86651, 2006 WL 1428920, at *5 (Ohio Ct. App. May 25, 2006); *see also, e.g., Morris v. Broska*, No. 2018-P-0086, 2019 WL 2579624, at *3 (Ohio Ct. App. June 24, 2019).

Stanley alleges Sedgwick tortiously interfered with his employment at FCA.  But, as stated above, Stanley states no facts to establish Sedgwick acted maliciously in denying his first FMLA application.  Therefore, because the Proposed Amended Complaint fails to state any facts to establish the requisite mental state, it would be futile to amend the Complaint to add this claim.

## V. CONCLUSION

For the foregoing reasons, Sedgwick's motion to dismiss is granted. While FCA's motion for judgment on the pleadings would have been granted on grounds of timeliness, Stanley's Proposed Amended Complaint asserts an additional factual allegation, which saves this claim from adverse judgment. As such, Stanley may amend his Complaint to assert this factual allegation alone. Because the Proposed Amended Complaint fails to state a claim of civil conspiracy, civil aiding or abetting, or tortious interference, amending the Complaint to add these claims would be futile. Therefore, Stanley's motion to amend is granted in part regarding allegations related to timeliness, but denied as to all other proposed amendments.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge