**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| STEPHEN J. STANLEY, JR., | |
| Plaintiff, | Civil Action No. |
| v. | 3:19-cv-00640-JRK |
| FCA US LLC, | (Hon. James R. Knepp) |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT**

Date:  July 9, 2021

Respectfully submitted,

*/s/ J Stanton Hill*
J Stanton Hill
Admitted pro hac vice
SEYFARTH SHAW LLP
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056
Email: shill@seyfarth.com

Heidi N. Hartman (0074293)
EASTMAN & SMITH LTD.
One SeaGate, 24th Floor
P.O. Box 10032
Toledo, OH  43699-0032
Telephone:  (419) 241-6000
Fax:  (419) 247-1777
Email:  hnhartman@eastmansmith.com
***Attorneys for FCA US LLC***

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF THE ISSUES ...................................................................1

II.   INTRODUCTION ..........................................................................................1

III.  STATEMENT OF UNDISPUTED FACTS ...................................................2

      A.    Uniform Attendance Procedure .........................................................2

      B.    Stanley's February 2018 FMLA Claim..............................................2

      C.    Disciplinary Layoffs and Termination of Stanley's Employment........................5

      D.    Stanley's Chapter 13 Bankruptcy ......................................................6

IV.   STANDARD OF REVIEW ...........................................................................6

V.    ARGUMENT .................................................................................................7

      A.    Stanley should be judicially estopped from pursuing his FMLA claim that he did not timely or sufficiently disclose in his bankruptcy..................................7

      B.    Stanley's FMLA claim was properly denied when he did not submit any certification by the February 26, 2018 deadline. ..................................12

            1.    Stanley was afforded more than 15 days to return certification...............12

            2.    Even if diligence is considered, Stanley was not diligent and did not warrant any extension of time to submit certification. .......................13

      C.    Stanley's late February 27, 2018 certification, even if treated as timely, was a negative certification and compelled claim denial. ....................................15

      D.    Because Stanley did not request and was not eligible for FMLA leave on May 11, 2018, he has no viable FMLA interference claim arising from or relating to that absence or his termination............................................19

VI.   CONCLUSION ............................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................................................7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................................6

*Edgar v. JAC Prod., Inc.*,
   443 F.3d 501 (6th Cir. 2006) ........................................................................... 12, 20

*Frazier v. Honda of Am. Mfg., Inc.*,
   431 F.3d 563 (6th Cir. 2005) ........................................................................... 13, 15

*Hoffman v. Pro. Med Team*,
   394 F.3d 414 (6th Cir. 2005) ...................................................................................15

*Holladay v. Rockwell Collins, Inc.*,
   357 F. Supp. 3d 848 (S.D. Iowa 2019)....................................................................16

*Kimberlin v. Dollar Gen. Corp.*,
   520 F. App'x 312 (6th Cir. 2013) ............................................................... 7, 8, 9, 11

*Kinds v. Ohio Bell Tel. Co.*,
   724 F.3d 648 (6th Cir. 2013) ........................................................................... 13, 15

*Nawrocki v. United Methodist Ret. Communities, Inc.*,
   174 F.App'x 334 (6th Cir. 2006) ................................................... 15, 16, 17, 18

*Piper v. Dollar Gen. Corp.*,
   No. 3:11-554, 2011 WL 4565432 (M.D. Tenn. Sept. 29, 2011).........................8, 9

*Rager v. Dade Behring, Inc.*,
   210 F.3d 776 (7th Cir. 2000) ........................................................................ 12, 13, 14

*Stoops v. One Call Communications, Inc.*,
   141 F.3d 309 (7th Cir. 1998) ........................................................................... 15, 16

*Tyler v. Fed. Express Corp.*,
   420 F. Supp. 2d 849 (W.D. Tenn. 2005), *aff'd*, 206 F. App'x 500 (6th Cir.
   2006)....................................................................................................................9, 11

*Underwood v. Yates Servs., LLC*,
   No. 16-CV-03276, 2018 WL 4494839 (M.D. Tenn. Sept. 19, 2018) ....................16

*United States v. GSD&M Idea City LLC*,
    No. 3:11-CV-1154-O, 2014 WL 11320447 (N.D. Tex. June 10, 2014), *aff'd*,
    798 F.3d 265 (5th Cir. 2015) ............................................................................................7

*White v. Wyndham Vacation Ownership, Inc.*,
    617 F.3d 472 (6th Cir. 2010) ......................................................................................*passim*

## I.     STATEMENT OF THE ISSUES

(1) Is Stanley judicially estopped from seeking relief on his FMLA interference claim due to his failure to timely and sufficiently disclose the claim in his Chapter 13 bankruptcy?

(2) Was Stanley's FMLA claim lawfully denied when he did not submit certification by the February 26, 2018 deadline?

(3) Notwithstanding its lateness, was Stanley's February 27, 2018 certification lawfully deemed as a "negative certification"?

(4) Does Stanley have any viable FMLA interference claim relating to his May 31, 2018 termination for his May 11, 2018 unauthorized personal day absence, when Stanley was not then eligible for FMLA leave and did not request FMLA leave for that absence?

## II.    INTRODUCTION

Plaintiff Stephen Stanley should be judicially estopped from pursuing his FMLA interference claim because he failed to timely and properly disclose that claim as an asset in his pending Chapter 13 bankruptcy.  Stanley filed for bankruptcy in May 2018, and his bankruptcy plan was confirmed in December 2018, more than six months after his termination.  Stanley made an untimely and incomplete disclosure to the bankruptcy court in April 2021, and only after the failure to disclose was raised by the undersigned.  Stanley cannot show the absence of bad faith, and the appropriate remedy is claim preclusive judicial estoppel.

Notwithstanding, Stanley's FMLA interference claim fails on the merits.  Stanley was not entitled to FMLA coverage for his February 19 and 26, 2018 absences because he did not submit any certification by the February 26, 2018 deadline.  Even if Stanley's late February 27 certification was treated as timely, it was a negative certification:  a complete and sufficient certification showing that Plaintiff was not entitled to FMLA leave on February 19 and 26.

On March 15, 2018, after Stanley was issued discipline on his February 19 and 26 absences, Stanley submitted a complete and sufficient certification showing he was entitled to FMLA leave. Stanley was then approved for intermittent FMLA leave, contingent upon him having worked 1250 hours in the past 12 months on his first day of FMLA absence, as required by the applicable federal regulations. Stanley, however, did not take or request any FMLA absence thereafter. Stanley took an unauthorized personal day on May 11, 2018, thereby incurring the final step in the attendance procedure, and was terminated on May 31, 2018. For these reasons, Stanley has no viable FMLA interference claim, and FCA US is entitled to summary judgment.

## III.  STATEMENT OF UNDISPUTED FACTS

### A.  Uniform Attendance Procedure

Stephen Stanley was employed as a Team Member at FCA US's Toledo Machining Plant from 1996 until his termination in May 2018. (Am. Compl. (Doc. 37) ¶ 5, 16.) Stanley was subject to the collectively bargained Uniform Attendance Procedure, which imposed progressive discipline for unauthorized absences as follows:  Step A1 - verbal warning; Step A2 - written warning; Step A3 - written warning and counseling; Step A4 - 3-day disciplinary layoff; Step A5 - 30-day disciplinary layoff; Step A6 - termination. (Stanley Dep. 40:2-41:10 & Ex. 24.)

### B.  Stanley's February 2018 FMLA Claim

Stanley was familiar with the FMLA process, having requested and received FMLA leave in years prior to 2018. (Stanley Dep. 53:5-21.) Sedgwick administers FMLA claims for FCA. (Thomas Dep. 8:13-19.) Stanley called Sedgwick on February 7, 2018, "[t]o get the paperwork for FMLA" and to initiate a new FMLA claim.[1] (Stanley Dep. 95:5-12.) Stanley sought FMLA

---

[1] FCA US operates on the calendar year for purposes of FMLA. (Thomas Decl. ¶ 3.) FMLA leave eligibility and entitlement are lawfully reassessed anew each year. *See* 29 C.F.R. § 825.305(e) (permitting new medical certification each leave year); *id.* § 825.300(b)(1) (eligibility to be checked "at the commencement of the first instance of leave for each FMLA-qualifying

leave for a new medical reason, in addition to his prior medical reasons (*id.* 95:13-23); however, Stanley did not tell Sedgwick about his medical condition when initiating the FMLA claim.  (*Id.* 95:24-96:10; Thomas Dep. 41:11-42:12 & Ex. 28 at Bates SEDGWICK 34-38.)  When Sedgwick asked Stanley whether he wished to receive claim documents by postal mail or e-mail, Stanley responded postal mail, even though he regularly used email and the internet.  (Thomas Decl. ¶ 4; Stanley Dep. 15:22-16:12, 19:4-11.)

The next day, February 8, 2018, Sedgwick generated and mailed Stanley a packet containing, among other things, an FMLA eligibility notice [2] with instructions to submit a completed medical certification form by February 26, 2018, a blank medical certification form, and instructions for accessing claim documents and information on the internet through Sedgwick's ViaOne Express[3] platform.  (Thomas Decl. ¶ 5 & Ex. A.)  Stanley claims he received the initial packet in the mail on February 15.[4]  (Stanley Dep. 93:8-14, 110:9-15 & Exs. 19, 39.)

On February 19, Sedgwick texted Stanley a reminder of the February 26 certification due date.  (Thomas Decl. ¶ 7.)  Three days later, on February 22, Stanley purportedly gave the initial packet to his doctor's office, St. Luke's Fallen Timbers Family Physicians ("St. Luke's").  (Stanley Dep. 89:4-6.)  Stanley did not follow up with St. Luke's until sometime after 4:15 pm on February

---

reason in the applicable 12-month period"); *id.* § 825.110(d) (calculation of whether employee worked 1250 hours in past 12 months "must be made as of the date the FMLA leave is to start").
[2] The February 8, 2018 eligibility notice explained that Stanley's FMLA eligilbity could not be determined until his first day of absence.  Stanley's first FMLA absence was February 19, 2018. Stanley received the February 21, 2018 notice of FMLA eligibility (with reminder of the February 26 certification deadline) on February 26.  (Stanley Dep. 114:11-21 & Ex. 4.)
[3] Had Stanley logged into ViaOne, he could have, *inter alia*, seen the medical certification due date, claim status, and communicate with his claim examiner, among other things.  (Thomas Decl. ¶ 10.)  Stanley had been provided notification about the availability of ViaOne in prior years, including in his January 27, 2017 claim approval packet.  (*Id.* ¶ 10 & Ex. D.)
[4] Had Stanley chosen to receive claim documents by email instead of postal mail, he would have received the initial packet by email on February 8, 2018.  (Thomas Decl. ¶ 6.)

26, at which time St. Luke's told him that the doctor was not in the office that day and could not fill out the certification.  (*Id.* 89:19-90:16, 114:11-21 & Ex. 4.)

Stanley then called Sedgwick and asked for an extension of his certification due date, claiming (falsely) that he had just received the initial packet that day.[5]  (Stanley Dep. 120:14-122:1 & Ex. 28; Thomas Decl. ¶ 8 & Ex. B at Bates SEDGWICK 31.)  The Sedgwick representative did not grant or deny the extension request and did not tell Stanley that he had the authority to decide. (Stanley Dep. 118:10-22, 123:11-124:1.)  The extension request was sent to the assigned Sedgwick claim examiner.  (Thomas Decl. ¶ 8 & Ex. B at Bates SEDGWICK 31.)

On February 27, the Sedgwick examiner denied Stanley's extension and denied Stanley's claim due to no certification received by the February 26 deadline.  (Thomas Dep. 38:22-39:2, 50:10-22 & Ex. B.)  Sedgwick called Stanley that day to notify him of the same.  (*Id.* 22:21-23:2, 48:16-49:1; Thomas Decl. Ex. B at SEDGWICK 29.)  At 3:46 pm on February 27, after the denial letter was sent, St. Luke's faxed a completed certification to Sedgwick.  (Thomas Dep. 51:2-52:20 & Ex. 29; Stanley Dep. 125:7-21 & Ex. 29.)  Sedgwick built a new claim based upon this certification.  (Thomas Dep. 53:22-54:5, 55:2-4 & Ex. C.)  Sedgwick denied the claim because Question No. 9 on the certification was answered "no," *i.e.*, that Stanley was not unable to perform his essential job functions due to his condition.  (*Id.* 57:23-58:24.)  On March 6, Stanley was sent a claim denial notice.  (Stanley Dep. 134:11-25 & Ex 6.)

On March 7, Sedgwick received another certification from St. Luke's, this time with the first part of Question No. 9 checked "yes" and the remainder of the question left blank.  (Thomas Decl. ¶ 9 & Ex. C.)  Sedgwick built a new claim based upon this certification.  (*Id.*)  On March 14,

---

[5] On February 26, Stanley received in the mail the February 21 eligibility notice, which was prompted by Stanley's first claimed FMLA absence on February 19, upon which eligibility could be determined.  (Stanley Dep. 113:19-114:21 & Ex. 4); *see supra* note 1 (eligibility regulations).

Sedgwick issued a deficiency notice requesting that the medical provider completely answer Question No. 9.  (Stanley Dep. 146:19-147:4 & Ex. 32.)  On March 15, St. Luke's faxed another certification to Sedgwick, answering Question No. 9.  (*Id.* 144:25-145:16 & Ex. 33.)  On March 22, Sedgwick issued and mailed Stanley a contingent approval notice.  (*Id.* 147:24-148:10 & Ex. 35.)  The same day, Sedgwick called Stanley to explain that he had not worked at least 1,250 hours in the past 12 months as of that date, as required to be eligible to take FMLA leave, and that his FMLA eligibility based upon hours worked would be determined upon his first FMLA absence. (Thomas Dep. 67:12-68:13 & Ex. 34 at Bates SEDGWICK 95.)  At no time thereafter did Stanley call Sedgwick to seek guidance about his hours worked or FMLA eligibility. (*Id.* Ex. 34.)

### C.    Disciplinary Layoffs and Termination of Stanley's Employment

Stanley called out FMLA absent on February 19 and 26.  (Stanley Dep. 46:17-47:7 & Ex. 26.)  Due to the denial of Stanley's FMLA claims, those absences were not covered by FMLA leave.  At 6:00 am March 12, 2018, Stanley was issued disciplinary layoffs under Steps A4 and A5 of the collectively bargained uniform attendance procedure, resulting in a total of 33 days of disciplinary layoff from March 12 through April 14.  (*Id.* 48:3-20, 49:4-17 & Ex. 27.)

On March 30, 2018, Fallen Timbers faxed Sedgwick a note stating, "Dr. Power was out of the office the afternoon of 2/26/18, therefore the FMLA paperwork was completed & signed on 2/27/18 and returned instead."  (Stanley Dep. 157:1-4 & Ex. 36.)  Sedgwick reviewed the note and informed Stanley on April 20, 2018, that his FMLA claim from February 7 through 26, 2018 would remained denied, as the doctor's note did not call into question the February 27 negative certification.  (Thomas Decl. ¶ 8 & Ex B at Bates SEDGWICK 000027.)  Stanley returned to work on April 16, 2018.  (Stanley Dep. 48:21-24.)

Stanley called in his May 11, 2018 absence and reported it as "personal time," also known as Paid Absence Allowance or "PAA."  (Stanley Dep. 42:11-43:8, 56:25-57:20.)  Stanley did not

report the May 11 absence to be related to any medical condition or FMLA leave.  (Am. Compl. (Doc. 37) ¶ 14; Stanley RFA Resp. Nos. 3-5.[6])  The May 11 personal day was not authorized by the collectively bargained attendance procedures, resulting in the A6 (final) disciplinary step and termination of Stanley's employment on May 31, 2018.  (Am. Compl. (Doc. 37) ¶ 15-16; Stanley Dep. 51:4-11 & Ex. 25.)

### D.      Stanley's Chapter 13 Bankruptcy

On May 24, 2018, Stanley filed for Chapter 13 bankruptcy, purportedly to restructure his medical and other debts and avoid foreclosure of his home.  (Stanley Dep. 174:12-175:18, 176:5-20 & Exs. 15-16.)  The bankruptcy plan was amended on December 11, 2018 and confirmed on December 17, 2018, through which Stanley consolidated debts, had some debts put on hold, and avoided foreclosure.  (*Id.* 178:2-21 & Exs. 17-18.)

As of Stanley's January 27, 2021 deposition in this matter, neither Stanley nor his attorneys told the Bankruptcy Court about his FMLA claim or this case.  (*Id.* 179:3-6.)  The undersigned's February 25, 2021 settlement letter to Stanley, sent pursuant to the Court's order (Doc. 40), raised the issue of judicial estoppel based on Stanley's failure to disclose his claims in this case as an asset in his bankruptcy.  (Hill Decl. ¶ 3, Ex. A at 5 n.1.)  On April 27, 2021, Stanley amended his bankruptcy asset disclosure only as follows:  "Employment with Fiat Chrysler Automobiles terminated May 31, 2018 (post-petition) in violation of FMLA."  (*Id.* ¶ 5, Ex. C at 8, #33.)

## IV.      STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[6] Stanley reported his May 11, 2018 absence as a personal day despite having previously received in the mail the March 22, 2018 contingent approval notice that he had certified an FMLA-qualifying serious health condition from March 7, 2018 through May 31, 2018.  (Stanley RFA Resp. 8; Stanley Dep. Ex. 35.)

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once a moving party meets its burden, the non-moving party must go beyond pleadings and set forth facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).  "[A] scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiff]." *Anderson*, 477 U.S. at 252.

## V.     ARGUMENT

### A.     Stanley should be judicially estopped from pursuing his FMLA claim that he did not timely or sufficiently disclose in his bankruptcy.

Courts regularly apply judicial estoppel to preclude legal claims, like Stanley's FMLA interference claim, that are not timely and properly disclosed as assets in Chapter 13 bankruptcy proceedings.  The Sixth Circuit has "applied the doctrine to bar employment related claims not disclosed in prior bankruptcy proceedings where (1) the debtor assumed a position contrary to one she asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the debtor's omission did not result from mistake or inadvertence."  *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013) (citing *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010)).  "Applying judicial estoppel under these circumstances recognizes the importance of the bankruptcy debtor's affirmative and ongoing duty to disclose assets, including unliquidated litigation interests."  *Id.* (citations omitted).  "For Chapter 13 to work ... the Chapter 13 debtor has a continuing duty to disclose property and earnings acquired after the commencement of the case."  *United States v. GSD&M Idea City LLC*, No. 3:11-CV-1154-O, 2014 WL 11320447, at *4 (N.D. Tex. June 10, 2014) (quotation omitted), *aff'd*, 798 F.3d 265 (5th Cir. 2015).

The first and second elements of the judicial estoppel test are met by Stanley not disclosing any of his legal claims in his sworn May 2018 Chapter 13 bankruptcy petition or any amendment

prior to the December 2018 confirmation of his bankruptcy plan.  (Stanley Dep. Ex. 15 at 15 #33 (answering "no" when asked whether he had any claims against third parties, whether or not he had filed a lawsuit or made a demand for payment), Ex. 17-18); *see, e.g.*, *Piper v. Dollar Gen. Corp.*, No. 3:11-554, 2011 WL 4565432, at *5 (M.D. Tenn. Sept. 29, 2011) (to establish a "contrary position," the defendant must show that the plaintiff did not disclose the claims she now asserts during the course of the bankruptcy proceeding and, to establish judicial 'adoption,' the defendant need only show that the bankruptcy court, for instance, 'confirmed' the Plan, implicitly recognizing that the plaintiff had no such claims." (citing *White*, 617 F.3d at 478-79)).

When assessing the third element--the absence of mistake or inadvertence--courts "consider whether '(1) [the debtor] lacked knowledge of the factual basis of the undisclosed claims; (2) []he had a motive for concealment; and (3) the evidence indicates an absence of bad faith.'" *Kimberlin*, 520 F. App'x at 315 (quoting *White*, 617 F.3d at 478). Each of these factors are met and weight in favor of applying claim preclusive judicial estoppel.

Stanley had knowledge of his claims and motive for concealment.  Stanley contemporaneously knew that he served a 33-day disciplinary layoff beginning March 12 through April 14, 2018 for his February 19 and 26 absences not covered as FMLA leave, Stanley was terminated on May 31, 2018 due to his May 11 unauthorized personal day, and he filed union grievances on the disciplines on April 26 and June 2, 2018, respectively.  (Stanley Dep. 169:12-170:3, 170:21-171:8 & Ex. 11-12.)  Stanley was represented by bankruptcy counsel at all relevant times.  (Stanley Dep. Ex. 15 at 7; Hill Decl. ¶ 5, Ex. C at 2.)  Stanley hired his employment counsel of record in this case on June 15, 2018, two weeks after his termination and almost six months before his bankruptcy plan was approved.  (Stanley Dep. 173:1-174:7 & Ex. 15 at 7, Ex. 22; *id.* 175:14-18.)  "[A] motive to conceal is presumed because 'it is always in a Chapter 13 petitioner's

8

interest to minimize income and assets' so that claims (and the judgments therefrom) get paid to the plaintiff, not the estate." *Piper*, 2011 WL 4565432, at *5 (quoting *White*, 617 F.3d at 479).

"[O]n a summary judgment motion, if the defendant comes forward with evidence establishing the first two prongs ("contrary position" and "adoption"), along with 'factual' knowledge of the claim and 'motive,' it is then the plaintiff's burden to come forward with affirmative evidence establishing "absence of bad faith." *Piper*, 2011 WL 4565432, at *5 (citing *White*, 617 F.3d at 478 n.4)). Stanley cannot meet his burden to provide evidence establishing the absence of bad faith, and moreover, the record evidence forecloses the absence of bad faith.

Stanley's bankruptcy plan was not approved until December 2018, more than six months after his termination. (Stanley Dep. Ex. 18.) Stanley did not amend his asset schedule in bankruptcy until April 27, 2021. (Hill Decl. ¶ 5, Ex. C at 8, #33.) Stanley's nearly three-year derogation of his ongoing asset disclosure obligation to the bankruptcy court was far longer than in *Kimberlin*, where the plaintiff's retaliatory termination claim was estopped for not being disclosed to the bankruptcy court in the 41 days between plaintiff's termination (*i.e.*, when the retaliation claim accrued) and the end of her bankruptcy. *Kimberlin*, 520 F. App'x at 315.

While the Sixth Circuit's "'absence of bad faith' inquiry focuses on affirmative actions taken by the debtor to notify the trustee or bankruptcy court of an omitted claim," *id.*, the Sixth Circuit does not credit amended bankruptcy disclosures filed only after the issue of nondisclosure is raised by the civil case defendant, as was the case here. *See, e.g., White*, 617 F.3d at 481 ("We will not consider favorably the fact that White updated her initial filings after the motion to dismiss was filed. To do so would encourage gamesmanship, since White only fixed her filings after the opposing party pointed out that those filings were inaccurate."); *Tyler v. Fed. Express Corp.*, 420 F. Supp. 2d 849, 859 (W.D. Tenn. 2005) (bankruptcy amendment three years after case was filed,

9

and after opposing party raised issue, did not negate an intent to conceal), *aff'd*, 206 F. App'x 500 (6th Cir. 2006). Stanley's April 27, 2021 asset amendment in bankruptcy was months after the undersigned raised the nondisclosure and estoppel issue during Stanley's January 27, 2021 deposition and in the February 25, 2021 response to Stanley's demand letter, sent per the Court's order to exchange letters prior to the judicial settlement conference. (*Compare* Stanley Dep. 179:3-18, Doc. 40, *and* Hill Decl. ¶ 3, Ex. A at 5 n.1, *with* Hill Decl. ¶ 5, Ex. C at 8, #33.)

Stanley cannot disclaim bad faith by pointing to his untimely and incomplete April 27, 2021 amended asset disclosure to the bankruptcy court, which stated only: "Employment with Fiat Chrysler Automobiles terminated May 31, 2018 (post-petition) in violation of FMLA." (Hill Decl. ¶ 5, Ex. C at 8, #33.) Stanley did not disclose this pending lawsuit (not even the case number) or provide the alleged value of his FMLA claim as the asset disclosure form requires. *See, e.g.*, *White*, 617 F.3d at 481–82 (finding an amended asset disclosure inadequate because, among other reasons, it "did not reflect the estimated value of the lawsuit"). The value of the claim is known to Stanley, and is material to Stanley's ongoing obligation to disclose assets to the bankruptcy court, trustee, and creditors. (*See* Am. ROG Resp. 4 (2/18/21 updated claim for $600k+ damages).)

The filing of this case in March 2019, three months after the bankruptcy was approved, all while Stanley had bankruptcy and employment counsel, further underscores bad faith. (Doc. 1); *see, e.g., White*, 617 F.3d at 482 (finding estoppel based in part on the fact that the plaintiff waited until just after the bankruptcy plan was confirmed to file her harassment case).

Moreover, Stanley's April 2021 amended asset disclosure says nothing about an FMLA interference claim arising from the February 19 and 26, 2018 absences, which Stanley has represented to the Court to be the only claim remaining in this case. In his June 2019 brief opposing FCA US's motion to dismiss, Stanley wrote, "Plaintiff's termination for taking a personal

day on May 11th was the ultimate harm caused by the original interference.  It is not a separate cause of action.  Plaintiff's complaint raises but one count of interference." (Doc. 21 at 5.)  The court adopted Stanley's argument in denying FCA US's motion to dismiss, stating "[a]s clarified by Stanley in his opposition, the termination does not give rise to a separate claim." (Doc. 32 at 7 n.2.)  Given Stanley's 2019 argument (to avoid dismissal) that his May 2018 termination is not a separate claim, Stanley cannot now argue that the phrase "Employment with Fiat Chrysler Automobiles terminated May 31, 2018 (post-petition) in violation of FMLA," without more, sufficiently discloses the sole remaining claim in this case as an asset in his bankruptcy.

By referring only to a "post-petition," (*i.e.*, post May 24, 2018) termination, Stanley's April 2021 amended asset disclosure in bankruptcy does not square with his 2019 assertions to the Court that his May 31, 2018 termination did not give rise to an FMLA interference claim and that his FMLA claim arose from his February 2018 absences and the March 2018 disciplinary layoff.  This inconsistency underscores the insufficiency of Stanley's April 2021 amended asset disclosure, betrays an intent to conceal, and forecloses Stanley from showing the absence of bad faith.  *See, e.g.*, *White,* 617 F.3d at 483 (noting that "the limited nature of [the plaintiff's] attempts to correct the initial omission" did not show an absence of bad faith, showed motive and intent to conceal, and supported the dismissal of the plaintiff's employment claim based upon judicial estoppel).

For the reasons discussed above, all the elements of judicial estoppel are met, Stanley cannot prove the absence of bad faith, and FCA US is entitled to summary judgment.  *See, e.g., White*, 617 F.3d at 484 (affirming summary judgment applying judicial estoppel because plaintiff's did not timely and properly disclose employment claim as asset in Ch. 13 bankruptcy); *Tyler*, 420 F. Supp. 2d at 859 (same); *Kimberlin*, 520 F. App'x at 312 (same, judgment on the pleadings).

**B.**  **Stanley's FMLA claim was properly denied when he did not submit any certification by the February 26, 2018 deadline.**

Even though Stanley's FMLA interference claim is subject to estoppel, it fails on the merits. Stanley must prove that: (1) he was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) he was entitled to leave under the FMLA, (4) he gave the employer notice of his intention to take leave, and (5) the employer denied the employee FMLA benefits to which he was entitled. *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). Further, Stanley must "establish that [FCA US's] violation caused [him] harm." *Id.* at 508 (citations omitted). For the reasons discussed below, Stanley cannot prove the third, fifth, or causation elements with respect to his February 19 and 26 absences resulting in a 33-disciplinary layoff. Stanley received all the time required by the regulations to provide certification, and the late February 27 certification was a negative certification requiring claim denial in any case.

**1.**  **Stanley was afforded more than 15 days to return certification.**

On February 7, 2018, Stanley called Sedgwick to request FMLA leave for a new medical reason. (Stanley Dep. 95:5-19.) In the initial packet dated and sent the next day, Stanley received, among other things, an FMLA certification form and a February 26 deadline to return it. (Stanley Dep. Ex. 19.) Because Stanley was provided more than 15 days to return the certification (*i.e.*, 18 days from February 8-26), the February 26 deadline was lawful and the "diligence" clause to extend the certification deadline in 29 C.F.R. § 825.305(b) was inapplicable:

> The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts **or the employer provides more than 15 calendar days to return the requested certification**.

29 C.F.R. § 825.305(b) (emphasis added). The time period is measured from "the employer's request," which was February 8 when the initial packet was generated and mailed to Stanley. *See, e.g.*, *Rager v. Dade Behring, Inc.*, 210 F.3d 776, 778 (7th Cir. 2000) (time measured from certified

12

letter dated and mailed December 23 imposing a January 12 deadline; it was a "(mis)understanding of the law" for plaintiff to believe he had 15 days from receipt of the letter; plaintiff lawfully terminated fewer than 15 days after receiving certification form).  Given that Stanley called Sedgwick on February 7 "[t]o get the paperwork for FMLA" and initiate a new FMLA claim (Stanley Dep. 95:5-12), Stanley well knew that he was required to provide certification, and the February 8 initial packet afforded Stanley more than 15 days to do so.  Stanley's claim was properly denied due to no certification received by February 26, and discipline was lawfully imposed.  *See, e.g.*, *Kinds v. Ohio Bell Tel. Co.*, 724 F.3d 648, 652 (6th Cir. 2013) ("because the failure to provide a medical certification is an independent basis for denying FMLA leave notwithstanding the appropriateness of that leave, we need not consider whether Kinds actually had a serious health condition during the period in question"); *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 567 (6th Cir. 2005) (no FMLA interference because certification was one day late).

### 2.  Even if diligence is considered, Stanley was not diligent and did not warrant any extension of time to submit certification.

Far from diligent, Stanley misled Sedgwick and later misrepresented facts to the Court, and nothing prevented him from meeting the February 26 deadline.  *See, e.g.*, *Rager*, 210 F.3d at 779 (holding that plaintiff was not diligent because she "has given no reason why she could not have submitted the required medical documentation by [the deadline] . . . .").  Stanley received FMLA certification papers from Sedgwick on February 15, 2018.  (Stanley Dep. 110:9-15 & Ex. 19.)  The next day, he went to a St. Luke's doctor's appointment.  (St. Luke's Decl., Bates FALLEN TIMBERS 23.)  Stanley could have provided the FMLA papers to St. Luke's that day; however, he did not do so.

On Monday, February 19, 2018, Sedgwick texted Stanley a reminder of the February 26 certification due date.  (Thomas Decl. ¶ 7-8 & Ex. B at Bates SEDGWICK 32.)  Stanley called in

his first FMLA absence that day, and wrote down the confirmation numbers on the cover page of the February 8 initial packet.  (Stanley Dep. 101:9-102:9 & Ex. 9.)  Not until February 22 did Stanley take the certification form to St. Luke's.  (Stanley Dep. 87:13-88:5.)  Stanley did not make any further inquiries of St. Luke's until late in the afternoon of the February 26 deadline.  (*Id.* 89:19-90:2.)  Stanley then called Sedgwick and asked for an extension of the certification deadline, claiming (falsely) that he had just received the initial packet that day.  (Stanley Dep. 120:14-122:1 & Ex. 28; Thomas Decl. ¶ 8 & Ex. B at Bates 31.)  However, Stanley received the initial packet 11 days earlier, on February 15.  (Stanley Dep. 110:9-15 & Ex. 19.)  Worse, Stanley alleged in his proposed and filed Amended Complaint that "Plaintiff did not receive the notice until February 26, 2018, the date Defendants claim the certification was due." (Doc. 22-2 ¶ 15; Doc. 37 ¶ 12.)  The Court relied on this when denying FCA US's Motion to Dismiss, stating "Stanley claims he did not receive this mailing [referring to the February 8 Sedgwick packet] until the day it was due -- February 26, 2018. (Doc. No. 1 at 3; Doc. No. 22-2 at 3.)" (Doc. 32 at 2.)

In denying FCA US's Motion to Dismiss, the Court similarly relied upon Stanley's allegation that he was "promised an extension of time to produce the certification" when he called Sedgwick in the late afternoon on February 26. (Doc. 32 at 2 (citing Doc. 22-2 at 3).)  Stanley disavowed the same at his deposition, stating that he did not know who would grant the extension, when it would be granted, or if it would be granted at all.  (Stanley Dep. at 120:6-9.)  Stanley merely "thought by asking for an extension, then it would be granted."  (Stanley Dep. at 119:25-120:5; *accord id.* 123:14-19.)  There is no record evidence of an extension or promised extension.

Stanley was not diligent as a matter of law and was not entitled to an extension of the February 26 certification deadline.  *Rager*, 210 F.3d at 779.  His failure to meet the deadline is

fatal to his FMLA interference claim arising from his February 19 and 26 absences.  *See Kinds*, 724 F.3d at 652; *Frazier*, 431 F.3d at 567.

### C. Stanley's late February 27, 2018 certification, even if treated as timely, was a negative certification and compelled claim denial.

"[A]n employer is entitled to rely on a 'negative certification' in denying FMLA leave." *Nawrocki v. United Methodist Ret. Communities, Inc.*, 174 F.App'x 334, 338 (6th Cir. 2006) (citing *Stoops v. One Call Communications, Inc.*, 141 F.3d 309 (7th Cir. 1998)). "Where an employer properly requests a physician's certification under the FMLA and that certification indicates the employee is not entitled to FMLA leave, the employer does not violate the FMLA by relying upon that certification in the absence of some overriding medical evidence . . . ." *Stoops*, 141 F.3d at 314; *Nawrocki*, 174 F. App'x at 338 ("[T]he original FMLA form did not show that Plaintiff was entitled to FMLA leave. Thus, Defendant was justified in denying this claim.").

Not only was Stanley's February 27, 2018 certification untimely, but also it was a "negative certification" because it answered Question #9 by stating that Stanley was **not** unable to perform his essential job functions due to his medical condition, which foreclosed entitlement to FMLA leave under 29 U.S.C. § 2612(a)(1)(D) and 29 C.F.R. § 825.112(a)(4).  (Stanley Dep. Ex. 29.) Under that statute and regulation, FMLA leave is permitted "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.112(a)(4); *accord Hoffman v. Pro. Med Team*, 394 F.3d 414, 419 (6th Cir. 2005) ("To be valid, a certification must show that the employee's serious health condition makes her unable to perform job functions." (citing 29 U.S.C. § 2612(a)(1)(D))).

Courts nationwide recognize that negative certifications include those, like the February 27 certification, that affirmatively disclose that an employee is not unable to perform essential job functions due to the claimed health condition, and thus does not have an FMLA-qualifying serious

15

health condition.  *See, e.g.*, *Holladay v. Rockwell Collins, Inc.*, 357 F. Supp. 3d 848, 868 (S.D. Iowa 2019) ("courts have held that an employer does not violate the FMLA when it denies leave on the basis of a physician's certification that states the employee is still capable of performing his or her job functions." (citing *Stoops*, 141 F.3d at 313–14)).

Moreover, Stanley's February 27 certification was a complete, sufficient and negative certification due to be denied FMLA leave without further inquiry under *Nawrocki* and the DOL regulations providing that "[i]f an employee submits a complete[7] and sufficient[8] certification signed by the health care provider, the employer may not request additional information from the health care provider."  29 C.F.R. § 825.307(a); *Underwood v. Yates Servs., LLC*, No. 16-CV-03276, 2018 WL 4494839, at *5 (M.D. Tenn. Sept. 19, 2018) (employer "was 'entitled to rely on [the] 'negative certification' in denying [plaintiff's] FMLA leave' without making any further inquiry").

A designation notice must issue within five business days of receipt of **any** complete and sufficient certification, whether the designation is positive or negative as to FMLA entitlement. "When the employer has enough information to determine whether the leave is being taken for a FMLA-qualifying reason (e.g., after receiving a certification), the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave within five business days absent extenuating circumstances."  29 C.F.R. § 825.300(d).  Whatever the determination may be, the determination must be issued within five business days of receipt of a complete and sufficient certification.  Mr. Stanley was timely sent a February 27 designation notice

---

[7] "A certification is considered incomplete if the employer receives a certification, but one or more of the applicable entries have not been completed."  29 C.F.R. § 825.305(c).  The February 27 certification was complete because all fields were filled out.  (Thomas Dep. Ex. 29.)

[8] "A certification is considered insufficient if the employer receives a complete certification, but the information provided is vague, ambiguous, or non-responsive."  29 C.F.R. § 825.305(c). Nothing about the "no" answer to Question #9 on the February 27, 2018 certification was vague, ambiguous, or non-responsive. (Thomas Dep. Ex. 29.)

that he was ineligible for FMLA leave due to no certification received by February 26, and another on March 6 due to his February 27 negative certification.  (Thomas Dep. 38:22-39:5 & Ex. B; Stanley Dep. 134:11-22 & Ex. 6.)

As previously noted by Judge Helmick, Stanley's February 27, 2018 certification requested certain periods of intermittent leave for migraine headaches, and checked "no" to answer Question #9. (Doc. 32 at 8.)  That Stanley's certification requested intermittent leave, however, does not inform, conflict, or render ambiguous in any way the absolute "no" answer to Question #9.  The negative certification in *Nawrocki* is materially identical to the February 27 certification:

| Nawrocki's Negative Certification (Hill Decl. Ex. B.) | Stanley's Negative February 27, 2018 Certification (Thomas Dep. Ex. 29) |
|---|---|
| 7.a. If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?<br><br>**Answer:  NO**<br><br>7.b. If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job . . . ?<br><br>**Answer:  NO**<br><br>7.c. If neither a nor b applies, it is necessary for the employee to be absent for work for treatment?<br><br>**Answer:  NO** | 9.  Is the patient unable to perform his/her essential job functions due to the condition?<br><br>**Answer:  NO** |
| 5.b.  Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment describe in #6 below)?<br><br>**Answer:  YES** | Part B, 1:  How will the patient be incapacitated?  **Intermittent Basis**<br><br>Part B, 2. Fill out the below for intermittent absences needed due to illness/flare-ups/treatment of the patient's condition: Frequency:  **3** times per month<br><br>Duration:  **2-3 days** per episode/flare-up/illness/appointment/treatment |

17

Judge Helmick observed that *Nawrocki* "describ[ed] a 'negative certification' as one which affirms the applicant has a serious medical condition but states that the condition would not make it necessary for the employee to be absent from work." (Doc. 32 at 8.) The *Nawrocki* opinion continues, however, stating "[a]t most, the medical certification indicated that Plaintiff requested an intermittent work schedule . . . ." *Nawrocki*, 174 F. App'x at 338. Like in *Nawrocki* Question 5.b., Stanley requested intermittent leave in Part B of his certification. It remained, however, Stanley's obligation to answer Question #9 to show **an FMLA-qualifying reason** for taking intermittent leave. Just like in *Nawrocki* Question #7, Stanley's answer to Question #9 was "no": he was not unable to work due to the condition, and thus, had no FMLA-qualifying reason. 29 U.S.C. § 2612(a)(1)(D).

The purported "conflict between the need for leave and the finding that Stanley was able to perform the essential functions of his job," as described by Judge Helmick (Doc. 32 at 8), was also present in *Nawrocki*, where the negative certification rule was applied and there was no FMLA interference for denying leave. *See Nawrocki*, 174 F. App'x at 338 ("Since Plaintiff's medical certification failed, at a minimum, to place Defendant on notice that she qualified for FMLA leave, it cannot be said that she was denied FMLA rights."). The same result should follow here.

The legally dispositive feature of a negative certification is not whether the employee seeks time off work (as anyone requesting FMLA leave does), but rather, whether the certification affirmatively shows that there is no **FMLA-qualifying** reason for leave. Indeed, the purpose of any FMLA certification is to ascertain whether there is an FMLA-qualifying reason for leave. 29 C.F.R. § 825.305(a). The federal regulations require the employer to accept whatever an employee's doctor writes a complete and sufficient certification without further inquiry. 29 C.F.R. § 825.307(a). That Stanley's doctor certified a need for intermittent time off does not render the

certification ambiguous or "insufficient" because the answer to Question #9 was clear and determinative: Mr. Stanley was not unable to perform job functions and therefore was not entitled to FMLA leave under 29 U.S.C. § 2612(a)(1)(D) and 29 C.F.R. § 825.112(a)(4).

Not every desire for leave, medical condition, or completed FMLA certification form entitles an employee to take FMLA leave.  Because Stanley's February 27, 2018 certification was complete, sufficient, and showed that his medical condition did not qualify as an FMLA serious health condition, he was not entitled to FMLA leave for his February 19 and 26 absences, and those absences were lawfully subject to discipline under the Uniform Attendance Procedure.

> **D.  Because Stanley did not request and was not eligible for FMLA leave on May 11, 2018, he has no viable FMLA interference claim arising from or relating to that absence or his termination.**

By letter of March 22, 2018, Stanley was notified that he was approved for intermittent FMLA leave from March 7, 2018 through May 31, 2018, for up to three episodes per month, three days per episode.  (Stanley Dep. 148:3-10 & Ex. 35.)  The March 22 contingent approval, requiring a first day of absence to determine FMLA eligibility, tracked the February 8 initial packet, which also conditioned approval on eligibility as of the first day of FMLA absence.  (*Compare* Stanley Dep. Ex. 19, with *id.* Ex. 35.)  The contingency of the approval did not deter Stanley from calling in his February 19 and 26 absences as FMLA absences.  (Stanley Dep. 101:17-102:21 & Ex. 9, 106:5-10, 112:7-24.)  Stanley called in his May 11, 2018 absence as a PAA day well aware of the FMLA process, that he had recently served a 33-day disciplinary layoff, and that his FMLA claim had been contingently approved through the end of May.  (Stanley RFA Resp. Nos. 8-9; Stanley Dep. Ex. 35.)  Stanley admits that he reached the final step in the attendance procedure, termination, for his May 11 personal day.  (Am. Compl. (Doc. 37) ¶ 16.)

Any FMLA interference claim by Stanley arising out of his May 11, 2018 unapproved absence and termination fails as a matter of law because Stanley called in his absence as a personal

day, and did not designate the absence as relating to his FMLA claim.  *Edgar*, 443 F.3d at 507 (requiring plaintiff to prove he gave the employer notice of her intention to take leave); *accord* 29 C.F.R. § 825.303(a); (Am. Compl. (Doc. 37) ¶ 14; Stanley RFA Resp. Nos. 3-5).

Further, there is no record evidence that Stanley had worked 1250 hours in the 12 months preceding May 11, 2018, as required for eligibility to take FMLA leave that day.  *Edgar*, 443 F.3d at 507 (plaintiff must prove eligibility to take FMLA leave); 29 C.F.R. § 825.110(d) (1250 hours worked in past 12 months required for FMLA eligibility, measured from the date leave is to start, *i.e.*, May 11); 29 C.F.R. § 825.300(b)(1) ("Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period.").

Finally, Stanley cannot show that his termination was caused by any purported FMLA interference.  *Edgar*, 443 F.3d at 508.  Stanley did not attempt to designate his May 11, 2018 absence as FMLA leave (Stanley RFA Resp. Nos. 3-5), and he admittedly was at a stage in the collectively bargained attendance procedures that did not allow him to take any personal days. (Am. Compl. (Doc. 37) ¶ 15.)  Only losses "by reason of" or "as a direct result of" FMLA interference are recoverable by statute, and nothing relating to FMLA-protected leave prompted Stanley's May 11, 2011 absence and the resulting termination.  29 U.S.C. § 2917(a).  Any FMLA interference claim relating to Stanley's termination or seeking damages based on Stanley's termination therefore should be dismissed.

## VI.    CONCLUSION

Stanley's failure to timely and properly disclose his FMLA claim as an asset in bankruptcy warrants the application of claim preclusive judicial estoppel.  Moreover, Stanley's claim fails on the merits because he was not improperly denied FMLA leave.  For the reasons set forth above, FCA US is entitled to summary judgment and the case should be dismissed with prejudice.

## CERTIFICATION OF COMPLIANCE

The undersigned hereby certifies that this case is assigned to the standard track and this memorandum adheres to the 20-page limitation for standard cases.

*/s/ J Stanton Hill*
J Stanton Hill
Counsel for Defendant

## CERTIFICATE OF SERVICE

I, J. Stanton Hill, do hereby certify that, on July 9, 2021, I have caused a true and correct

copy of the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS

MOTION FOR SUMMARY JUDGMENT, to be served upon the following via the Court's

electronic filing system on the following counsel of record:

Catherine H. Killam
Greenfield, Killam & Frank, Ltd.
3450 West Central Avenue, Suite 370
Toledo, OH 43606
Email:  ckillam@gkflaw.com

Matthew B. Bryant
Bryant Legal, LLC
3450 West Central Avenue, Suite 370
Toledo, Ohio 43606
mbryant@bryantlegalllc.com

*/s/ J Stanton Hill*
J Stanton Hill
Counsel for Defendant