IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**STEPHEN J. STANLEY, JR.,**   CASE NO. 3:19 CV 640

    Plaintiff,

    v.   JUDGE JAMES R. KNEPP II

**FCA US, LLC,**
                                       **MEMORANDUM OPINION AND**
    Defendant.                         **ORDER**

## INTRODUCTION

This case arises out of Defendant FCA US, LLC's denial of Plaintiff Stephen J. Stanley, Jr.'s request for FMLA leave in February 2018, and subsequent May 2018 termination for attendance violations. Currently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 42), which Plaintiff opposes (Doc. 43), and to which Defendant has replied (Doc. 44). Also pending is Plaintiff's Motion for Leave to File a Sur-Reply (Doc. 45). For the reasons discussed below, the Court grants Plaintiff's Motion for Leave to File a Sur-Reply, and grants Defendant's Motion for Summary Judgment as Plaintiff's claims are barred by judicial estoppel.

## BACKGROUND

Plaintiff worked at Defendant's Toledo Machining Plant from 1996 until his termination in May 2018. *See* Plaintiff Depo., Doc. 43-1, at 25, 50.

Plaintiff took two days of work off in February 2018 for which he requested and was denied FMLA leave. *See* Doc. 43-6, at 7, 24. These absences – thus unexcused – moved him along on a multi-step attendance violation progressive discipline plan. *See* Doc. 43-4, at 111,

Plaintiff Depo., Doc. 43-1, at 48; Doc. 42-12, at 159, 162. Plaintiff served a 33-day disciplinary layoff due to these attendance violations. (Plaintiff's Dep., Doc. 43-1, at 48-49); (Doc. 43-3, at 111). A further unexcused absence in May 2018 resulted in him reaching the final step of the plan; Defendant therefore fired him May 31, 2018. *See* Plaintiff Decl., Doc. 43-4, at ¶ 9; Doc. 43-3, at 108; Plaintiff Depo., Doc. 43-1, at 51; Doc. 42-12, at 157, 159. Thus, but for Plaintiff's February 2018 absences, he would not have been fired for his unexcused absence in May.

Plaintiff filed union grievances regarding his attendance-related discipline and his termination on April 26 and June 2, 2018, respectively. (Plaintiff Depo., Doc. 43-1, at 169-71); (Exs. 11-12 to Plaintiff Depo., Doc. 43-3, at 9-11).

Plaintiff first consulted with his current counsel regarding a claim pertaining to his termination on June 15, 2018. (Plaintiff Depo., Doc. 43-1, at 174); (Ex. 22 to Plaintiff Depo., Doc. 42-12, at 149). Plaintiff did not retain counsel at that time because he believed he could get the same result faster and cheaper through the grievance process. (Plaintiff Decl., Doc. 43-4, at ¶ 14). He ultimately retained counsel around January 25, 2019 after dissatisfaction with the proposed resolution of his grievances. *Id.* at ¶ 15. He filed this suit March 22, 2019. (Doc. 1).

Chapter 13 Bankruptcy Proceedings

On May 24, 2018, Plaintiff (and his wife) filed for Chapter 13 bankruptcy. (Plaintiff Depo., Doc. 43-1, at 174-76); *see also* Doc. 43-3, at 20-82 (Bankruptcy Petition and Plan). He did so to restructure debts (including medical debts) and avoid potential home foreclosure. (Plaintiff Depo., Doc. 43-1, at 176-77). On the Schedule A/B asset disclosure form, Plaintiff answered "no" to a question regarding "[c]laims against third parties whether or not you have filed a lawsuit or made a demand for payment." (Doc. 43-3, at 34). Plaintiff amended his bankruptcy plan on December 11, 2018 to state there would be "no further modification of

dividend to unsecured creditors below 100%.". (Doc. 43-3, at 84-85). The bankruptcy plan was confirmed on December 17, 2018. (Doc. 43-3, at 87-89). Per Plaintiff, the plan consolidated debts, put some debts on hold, and Plaintiff kept his home. *See* Plaintiff Depo., at 178-79.

At the time of Plaintiff's January 2021 deposition, neither he nor his attorneys had informed the bankruptcy court about this pending lawsuit. (Plaintiff's Depo., at 179). In a February 25, 2021 letter relating to settlement, defense counsel in this case raised the issue of judicial estoppel based on Plaintiff's failure to disclose his claims as an asset. (Doc. 42-3, at 6 n.1). Three months later, on April 27, 2021, Plaintiff amended his bankruptcy asset disclosure, in response to the above Schedule A/B question regarding claims against third parties to state: "Employment with Fiat Chrysler Automobiles terminated May 31, 2018 (post-petition) in violation of FMLA". (Doc. 42-5, at 9). He listed the value of this claim as "Unknown." *Id.*

### STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*.

**DISCUSSION**

Defendant presents two independent arguments that it is entitled to summary judgment: (1) Plaintiff should be judicially estopped from bringing his FMLA claim because he did not timely disclose it in bankruptcy, and (2) on the merits, Plaintiff has not demonstrated an FMLA violation. For the reasons discussed below, the Court finds Plaintiff's claim barred by judicial estoppel and grants Defendant summary judgment.

<u>Judicial Estoppel</u>

Defendant contends Plaintiff should be judicially estopped from pursuing his FMLA claim because he failed to disclose it in his 2018 bankruptcy proceedings and that failure was not the result of "mistake or inadvertence". Plaintiff contends estoppel is not appropriate.

Judicial estoppel seeks "to preserve the integrity of the courts, by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) (citation omitted). It applies to "prevent a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted). "[T]he purpose of judicial estoppel is not to protect the litigants; it is to protect the integrity of the judicial system." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 427 (6th Cir. 2005) (citing *In re Coastal Plains*, 179 F.3d 197, 210 (5th Cir. 1999)). "[T]he evil to be avoided is colorfully described as 'the perversion of the judicial machinery,' 'playing fast and loose with the courts,' 'blowing hot and cold as the occasion demands,'" and "hav[ing] [one's] cake and eat[ing] it too.'" *Browning*, 283 F.3d at 776 (quoting *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988) (alteration in original)).

4

Relevant to the present case, judicial estoppel applies "to bar employment related claims not disclosed in prior bankruptcy proceedings where (1) the debtor assumed a position contrary to one she asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the debtor's omission did not result from mistake or inadvertence." *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013) (citing *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010)).

Plaintiff concedes the first two elements; he did not list the claim on his petition, and the bankruptcy court confirmed his plan. *See* Doc. 43, at 20 (citing, *inter alia*, *Lewis*, 141 F. App'x at 425 (pursuing an undisclosed cause of action "creates an inconsistency sufficient to support judicial estoppel" and when bankruptcy court confirms bankruptcy plan, it is accepting the position presented by the debtor)).

Thus, the dispute is only over the third element – whether Plaintiff's omission "did not result from mistake or inadvertence." *Kimberlin*, 520 F. App'x at 314. On this element, the Court considers whether "(1) [the debtor] lacked knowledge of the factual basis of the undisclosed claims; (2) [he] had a motive for concealment; and (3) the evidence indicates an absence of bad faith." *White*, 617 F.3d at 478. "[O]nce a defendant has met its burden to establish that judicial estoppel may be appropriate because a plaintiff has failed to disclose his claim in a prior bankruptcy proceeding, despite having knowledge of the factual basis for the claim and motive to conceal, the burden then shifts to the plaintiff to put forth evidence showing a lack of bad faith." *Finney v. Volvo Grp. N. Am., LLC*, 562 B.R. 914, 918 (M.D. Tenn. 2016); *White*, 617 F.3d at 478 n.4.

Defendant contends a motive to conceal is presumed because a bankruptcy petitioner always has a motive to conceal assets and Plaintiff received significant financial benefits from bankruptcy. In opposition, Plaintiff argues he had no motive to conceal because he received no specific benefit from the omission of this claim.[1] This is so, he contends, because his Chapter 13 bankruptcy plan at all times included 100% payments to his creditors, and therefore he received no financial benefit or windfall from the failure to disclose this claim.

At the outset, the Court notes "[a] debtor in a Chapter 13 proceeding has a duty to disclose any potential claim as an asset to the bankruptcy court in a schedule of assets and liabilities." *Davis v. Fiat Chrysler Automobiles U.S., LLC*, 747 F. App'x 309, 314 (6th Cir. 2018). This disclosure obligation is ongoing, "meaning a debtor has 'an ongoing express, affirmative duty to disclose all assets, including contingent and unliquidated claims' that arise at any time during the bankruptcy proceeding." *Id.* (citing *White*, 617 F.3d at 479 n.5) (internal quotation omitted). "[T]he disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *Lewis*, 141 F. App'x at 424 (internal quotation omitted"). The Sixth Circuit has therefore recognized that "applying judicial estoppel to bar known, potential claims a debtor fails to declare to the bankruptcy court 'recognizes the importance of the bankruptcy debtor's affirmative and ongoing duty to disclose assets, including unliquidated litigation interests.'" *Davis*, 747 F. App'x at 314 (quoting *Kimberlin*, 520 F. App'x at 314).

Defendant accurately notes the Sixth Circuit has said "[i]t is *always* in a Chapter 13 petitioner's interest to minimize income and assets." *Lewis*, 141 F. App'x at 426 (internal quotation omitted) (emphasis added); *see also Davis*, 747 F. App'x at 316 ("if a claim existed,

---

1. Defendant asserts – and Plaintiff does not contest – that Plaintiff had knowledge of the factual basis of his claim at the time of his bankruptcy plan confirmation.

6

there would be a motive to conceal this asset") (citing *Lewis*, 141 F. App'x at 426); *White*, 617 F.3d at 479 (quoting *Lewis* and noting plaintiff "had a motive for concealment: if the harassment claim became a part of her bankruptcy estate, then the proceeds from it could go towards paying White's creditors, rather than simply to paying White"). Several district courts post-*Lewis* and *White* have therefore held a motive to conceal is presumed from knowledge. *See, e.g.*, *Piper v. Dollar Gen. Corp.*, 2011 WL 4565432, at *5 (M.D. Tenn.) ("[A] motive to conceal is presumed because it is always in a Chapter 13 petitioner's interest to minimize income and assets . . ."); *Scisney v. Gen. Elec. Co.*, 2015 WL 7758542, at *5 (W.D. Ky.) ("A motive to conceal can be inferred from the sole fact that a plaintiff knew of a claim and did not disclose it, as it stems from the idea that if the debtor's claim became a part of his bankruptcy estate, then the proceeds from it could go towards paying the debtor's creditors instead of the debtor.") (citing *White*, 617 F.3d at 479); *Assasepa v. JPMorgan Chase Bank*, 2012 WL 88162, at *13 (S.D. Ohio) ("A motive to conceal can be inferred from the omission itself, because 'by omitting the claims, [the debtor] could keep any proceeds for herself and not have them become part of the bankruptcy estate.'") (internal quotations and citations omitted); *see also Wehbe v. Wescast Indus.*, 2020 WL 7626784, at *6 (E.D. Mich.) ("[S]ubstantial and inexplicable differences in Plaintiff's representations of this suit's expected value when he is before this Court and when he is before the bankruptcy court lends credence to the presumption that "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets.'") (quoting *Lewis*, 141 F. App'x at 426).

And the Sixth Circuit has repeated the presumptive "always" statement in subsequent cases. *See Newman v. Univ. of Dayton*, 751 F. App'x 809, 814 (6th Cir. 2018) ("Regarding motive, Newman argues that 'he had no motive to conceal [his University] income because each year he submitted copies of his tax returns, including his W-2 statements showing [the] income,

7

to the Trustee.' But, we have observed that it 'is always in a Chapter 13 petitioner's interest to minimize income and assets.' And, Newman did not readily provide his 2016 tax returns to the Trustee.") (internal record citation omitted) (quoting *Lewis*, 141 F. App'x at 426)); *Davis*, 747 F. App'x at 316 ("if a claim existed, there would be a motive to conceal this asset")

As one court explained, the rationale behind the rule that "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets", *Lewis*, 141 F. App'x at 426, is simple: "The more assets that a Chapter 13 debtor discloses to the court, the greater the percentage of his or her total debt will be included in the payment schedule." *Bates v. Dura Auto. Sys., Inc.*, 650 F. Supp. 2d 754, 766 (M.D. Tenn. 2009), *rev'd in part on other grounds by*, 625 F.3d 283 (6th Cir. 2010); *see also Crankshaw v. CSX Transp., Inc.*, 2013 WL 5276573, at *4 (E.D. Tenn.) ("Although a different result in the bankruptcy court may not be required for the application of judicial estoppel, what a plaintiff stood to gain by concealing his claim is relevant to whether he had any motive to do so.").

The Court acknowledges that application of a rule presuming motivation is less clear in a case such as this one where, although Plaintiff obtained the benefits of bankruptcy, he was (and is) required to pay 100% of his outstanding debts. Plaintiff seeks to distinguish many of the above cases on this basis. He argues that in such cases where a motive to conceal has been presumed, the claimants had something identifiable to gain by minimizing their income and assets because their bankruptcy plans provided for payment of less than 100 percent of the at-issue debt; that is, the less-than-full payment supplies the motive. By contrast, he contends, he could obtain no financial benefit from his failure to disclose the claim, and therefore, had no motive to conceal it.

A few district courts have found no motive to conceal where a plaintiff's bankruptcy plan required payment of 100 percent of the debt. *See Best*, 339 B.R. at 185 (denying defendant's motion to dismiss, finding fact that plaintiff consented to increasing the amount to be paid to unsecured creditors to 100 percent supported argument that they had no motive to conceal)[2]; *Bohanan v. Bridgestone/Firestone N. Am. Tire, LLC*, 2007 WL 1091209, at *6 (M.D. Tenn.) (finding Plaintiff has "relatively little motive to conceal the potential cause of action" during a time period where the bankruptcy plan provided for payment of 100 percent of unsecured claims, "since it was unlikely that any judgment received in the civil case would have resulted in a windfall to them").

But more courts have found a such a motive exists even where a plan provides for 100% repayment. *See, e.g.*, *U.S. ex rel. Long v. GSDM Idea City, LLC*, 798 F.3d 265, 273-74 (5th Cir. 2015). The *Long* court explained a motive to conceal "may be shown by evidence of a potential financial benefit that could result from concealment." *Id*. Such benefits courts have identified – even with 100% repayment plans – include: (1) an interest-free payment plan, (2) the structured nature of a bankruptcy payment plan itself; and (3) the fact that creditors are entitled to knowledge of all assets to enable them to determine whether to object to, or seek modification of the plan. This final factor is at the core of the judicial estoppel analysis itself – the protection of the integrity of the courts, specifically the bankruptcy court.

In *Long*, the Fifth Circuit rejected the argument that a 100% repayment plan negated motive to conceal because "the interest alone that Long saved provided sufficient motive". *Id.* at 273-74. There, after the opposing party raised judicial estoppel, Long moved to reopen his bankruptcy proceeding "so that, in the event of a recovery in this case, he may pay interest to his

---

2. At the time of the court's consideration in *Best*, the plaintiff had paid the full amount of her debts and her bankruptcy had been discharged. 339 B.R. at 182.

creditors." *Id.* at 273. In *Robinson v. Tyson Foods, Inc.*, the Eleventh Circuit explained that "full monetary repayment does not necessarily preclude a finding of a motive to conceal" because "[t]he application of judicial estoppel does not require that the nondisclosure must lead to a different result in the bankruptcy proceeding"; "[r]ather, the motive to conceal stems from the possibility of defrauding the courts and not from any actual fraudulent result." 595 F.3d 1269, 1275 (11th Cir. 2010); *see also In re Watts*, 2012 WL 3400820, at *7-8 (holding that an interest-free payment plan spread over five years provides sufficient motive to conceal even when plan otherwise provided 100% payment).

The rationale behind these holdings is that "[t]he motive at issue here stems from the possibility of defrauding the courts, and not from any fraudulent result, so the fact that no creditors were prejudiced by the nondisclosure does not make the application of judicial estoppel inappropriate." *Mason v. Mitchell's Contracting Serv., LLC*, 816 F. Supp 2d 1178, 1187-88 (S.D. Ala. 2011) (finding motive to conceal despite plan requiring 100% repayment) (internal quotation omitted). This is so because "[t]he creditors must be able to rely on the financial disclosures of a debtor when making decisions throughout the bankruptcy, including whether to object to the confirmed plan or to seek a modification. That ability is impaired when disclosure by the debtor is incomplete, untruthful, or less than forthcoming." *Woodard v. Taco Bueno Rests., Inc.*, 2006 WL 3542693, at *10 (N.D. Tex.); *see also Cargo v. Kansas City S. Ry. Co.*, 408 B.R. 631, 644 (W.D. La.) ("[I]n a post-confirmation context, . . . a disclosure [of assets acquired after confirmation] might affect a creditor's decision about whether to seek a modification.").

That is, applying judicial estoppel even in the context of full repayment protects the integrity of the bankruptcy courts and the need for full disclosure in bankruptcy proceedings.

*Davis*, 747 F. App'x at 314. And a motive to conceal can be presumed despite a plan full repayment because, as *White* explained, "if the harassment claim became a part of her bankruptcy estate, then the proceeds from it could go towards paying White's creditors, rather than simply to paying White." 617 F.3d at 479.

One district court in the Sixth Circuit has explored whether the presumption should always apply. *See Crankshaw*, 2013 WL 5276573, at *3 ("The cases in which this [presumption] has been noted by the Sixth Circuit, however, involved plaintiffs who had something to gain by minimizing their income and assets."). In *Crankshaw*, the district court found the claimant "could not have benefitted from concealing [her] claim" because at the time her underlying cause of action accrued, "Plaintiff had already completed all payments under the plan", and she did not initiate suit until seven months after her bankruptcy action was dismissed. *Id.* at *3-4. In so confronting whether such a presumption always applies, the *Crankshaw* court distinguished cases in which courts found a motive to conceal despite a full repayment plan. It did so, in part, on the basis that in those cases, the subsequent lawsuit (and failure to disclose) were initiated while the claimant's bankruptcy was still open and ongoing:

> *Robinson* is distinguishable from this case. In *Robinson*, the plaintiff brought the cause of action nine months before she was dismissed from bankruptcy. In that time period she could have settled the case and could have kept the proceeds of that settlement to herself rather than provide them to her creditors. Although she *later* paid her debts off in full, the court noted "Robinson has the benefit of making this argument in hindsight. When reviewing potential motive, the relevant inquiry is intent at the time of non-disclosure." *Id.* at 1276.

*Id.* at *4 (quoting *Robinson*, 595 F.3d at 1275).

This case falls into the same category as *Robinson*. Although Plaintiff's bankruptcy plan provides for 100% repayment, that plan remains open. Thus, like in *Robinson* (and distinguishable from *Crankshaw*), Plaintiff – in the time period between the initiation of this case

11

in March 2019 and the time of his initial disclosure to the bankruptcy court in April 2021 – "could have settled the case and could have kept the proceeds of that settlement to [himself] rather than provide them to [his] creditors." *Id.*; *see also White*, 617 F.3d at 479 ("if the harassment claim became a part of her bankruptcy estate, then the proceeds from it could go towards paying White's creditors, rather than simply to paying White").

This bankruptcy judicial estoppel rule can certainly operate harshly or even seemingly inequitably. A failure to disclose may result in an otherwise-valid employment discrimination claim being barred and a discriminating employer receiving something of a windfall.[3] But this Court is bound by Sixth Circuit pronouncements on the issue. And the Sixth Circuit has held, now repeatedly, that motive to conceal is presumed from the failure to disclose a known claim. *Lewis*, 141 F. App'x at 426 ("[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets"); *White*, 617 F.3d at 479 ("White had a motive for concealment: if the harassment claim became a part of her bankruptcy estate, then the proceeds from it could go towards paying White's creditors, rather than simply to paying White"); *Davis*, 747 F. App'x at 316 ("if a claim existed, there would be a motive to conceal this asset").[4] And, as the caselaw set

---

3. As it is unnecessary to do so, the Court offers no opinion regarding the merits of the underlying FMLA interference claim at issue in this case.

4. It is possible this presumptive rule could change. The statement – "It is always in a Chapter 13 petitioner's interest to minimize income and assets" – originated in *Lewis*, where it is a direct quote from the district court opinion, citing an Eleventh Circuit case. *See* 141 F. App'x at 426 (citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)). Later Sixth Circuit opinions repeat the statement. *White*, 617 F.3d at 479; *Davis*, 747 F. App'x at 316; *Newman*, 751 F. App'x at 814.
 The Eleventh Circuit has since overruled *Burnes* in part. *See Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017). The Eleventh Circuit's two-part test for judicial estoppel requires a party to have taken an inconsistent position and that the inconsistent position was "calculated to make a mockery of the judicial system." *Id.* at 1181. *Slater* clarified that test and overruled "the portions of *Burnes* . . . that permitted the inference that a plaintiff intended to make a mockery of the judicial system simply because he failed to disclose a civil claim." *Id.* at

12

forth above explains, Plaintiff received potential financial benefits from concealing the claim, and thus had a motive to do so.

As such, the Court finds Defendants have shown Plaintiff had knowledge of the claim, and, by virtue of that knowledge and an ongoing bankruptcy plan, a motive to conceal it.

*Bad Faith*

Having found Defendant has established judicial estoppel may be appropriate because plaintiff failed to disclose his claim in bankruptcy, despite knowledge of the claim and a motive to conceal, the burden shifts to Plaintiff to set forth evidence showing a lack of bad faith. *White*, 617 F.3d at 478; *Finney*, 562 B.R. at 918.

The Sixth Circuit analyzes three factors in determining bad faith for judicial estopped in the bankruptcy context: effort, effectiveness, and timing. To avoid estoppel, a party must generally show a good-faith, effective, and timely effort to inform the bankruptcy court about the potential claim. *See Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 898–99 (6th Cir. 2004).

---

1185. It found *Burnes* "conflated the question of whether the plaintiff's omission was inadvertent with the separate question of whether the plaintiff actually intended to manipulate the judicial system to his advantage." *Id.* Instead, the Eleventh Circuit instructed district courts to "consider all the facts and circumstances of the case", including, *inter alia*, the plaintiff's level of sophistication, attempts to correct the disclosures, whether creditors were aware of the omission, and any findings or actions by the bankruptcy court after the discovery of the omission. *Id.* It offered three justifications for the change: (1) "such an inquiry ensures that judicial estoppel is applied only when a party acted with a sufficiently culpable mental state"; (2) "it allows a district court to consider any proceedings that occurred in the bankruptcy court after the omission was discovered, arguably a better way to ensure that the integrity of the bankruptcy court is protected"; and (3) "limiting judicial estoppel to those cases in which the facts and circumstances warrant it is more consistent with the equitable principles that undergird the doctrine." *Id.* at 1185-86. It concluded: "By rejecting a one-size-fits-all approach, we reduce the risk that the application of judicial estoppel will give the civil defendant a windfall at the expense of innocent creditors." *Id.* at 1186.

This Court, however, remains bound by the currently-applicable decisions of the Sixth Circuit.

13

In *Eubanks*, the Sixth Circuit focused on the claimants' efforts and found the omission of a cause of action from bankruptcy schedules absent bad faith because they:

> (1) notified the bankruptcy trustee of the claim during a meeting and the trustee requested all of the documents regarding the claim; (2) asked the trustee on several occasions over several months whether he intended to pursue the claim on behalf of the estate; (3) moved the bankruptcy court for a status conference on the issue of the lender liability claim; (4) unsuccessfully moved to allow the trustee to be substituted for plaintiffs in the lender liability action after the action was filed and after the trustee refused to abandon the claim in the bankruptcy proceeding; and (5) filed an amendment to their original bankruptcy petition to add the lender liability action to their bankruptcy schedules after the defendant filed a motion to dismiss on the basis of judicial estoppel.

*Lewis*, 141 F. App'x at 426 (citing *Eubanks*, 385 F.3d at 895–97). Other cases have rejected claims of good faith based on effort by comparing a claimant's more limited efforts to the significant efforts in *Eubanks*. *See, e.g., id.* at 427 ("Lewis's actions in the present case [including not disclosing the claim, attempting to inform someone in the Trustee's office, and only doing so after Defendant raised the estoppel issue] pale in comparison to the actions taken by the plaintiffs in *Eubanks*."); *Kimberlin*, 520 F. App'x at 315 (finding an affidavit alleging unintentional omission "pale[d] in comparison" to the evidence of good faith offered in *Eubanks*).

Regarding timing, courts look more favorably on efforts made before an opposing party raises the estoppel issue, and less favorably on efforts made subsequent thereto. *See White*, 617 F.3d at 481 ("We will not consider favorably the fact that White updated her initial filings after the motion to dismiss was filed. To do so would encourage gamesmanship, since White only fixed her filings after the opposing party pointed out that those filings were inaccurate."); *Newman*, 751 F. App'x at 814-15 ("Although it is true that Newman eventually corrected his omissions, he did so only after those omissions had been brought to the attention of the district and bankruptcy courts by other parties."). Courts also look to the timing between the bankruptcy

action and the employment discrimination action. *See White*, 617 F.3d at 482 (factoring how the plaintiff "waited until just after the [bankruptcy] plan confirmation hearing to file her harassment claim with the district court" into its decision finding bad faith)

Looking to the relevant factors of timing, effort, and effectiveness, the Court finds Plaintiff has not demonstrated an absence of bad faith.

First, Plaintiff has not shown an absence of bad faith in the effectiveness or effort in his attempts to disclose to the bankruptcy court. Plaintiff attempted to disclose so once, in April 2021. He said, *in toto*: "Employment with Fiat Chrysler Automobiles terminated May 31, 2018 (post-petition) in violation of FMLA". (Doc. 42-5, at 9). Defendant points out he failed to provide any detail – such as the case number of this case (which, at that time, had been pending for over two years), any detail about how the termination was actually tied to FMLA denials in February 2018, or – as the form required – an estimated value of the claim. *See* Doc. 42-5, at 9 (listing value of claim as "Unknown"). This is in stark contrast to Plaintiff's February 18, 2021 amended interrogatory response setting forth his claimed damages as exceeding $600,000. *See* Doc. 42-15; *Wehbe*, 2020 WL 7626784, at *5-6 (finding single amendment to bankruptcy schedule "limited, ineffective, and contradictory" when it stated the expected value of a lawsuit was $25,000 in contrast to the Complaint's allegations one-year prior that the suit was valued "in excess of $75,000 'exclusive of costs, interest and attorney fees.'"); *Swanigan v. Nw. Airlines, Inc.*, 718 F. Supp. 2d 917, 926 (W.D. Tenn. 2010) (finding "gross[] undervalu[ing]" of lawsuit on bankruptcy schedule disclosure supported application of estoppel). !

Second, Plaintiff has not shown an absence of bad faith related to timing. Plaintiff's bankruptcy was finalized in December 2018, he hired an attorney in January 2019[5], and he filed suit roughly two months thereafter, in March 2019. The evidence shows Defendant's counsel questioned Plaintiff about whether he had disclosed his claim to the bankruptcy court at his January 2021 deposition, and explicitly raised the lack of disclosure and potential estoppel in February 2021. Plaintiff did not attempt to amend his bankruptcy petition for the first time until three months later in April 2021. Plaintiff's actions are somewhat analogous to those in *White*, where the Sixth Circuit found plaintiff "waited until just after the plan confirmation hearing to file her harassment claim with the district court" militated against a finding of lack of bad faith. *White*, 617 F.3d at 482. In White, the plaintiff filed her employment discrimination action the day after her bankruptcy plan was confirmed. *Id.* at 482 n.11. Here, Plaintiff hired counsel approximately one month after his bankruptcy plan was confirmed, and filed suit two months after that. But second, and more importantly to this Court's analysis, Plaintiff's first – and only – attempt to correct his bankruptcy disclosures occurred only *after* the issue was raised by opposing counsel. Here, the issue was raised first informally, rather than in a motion, the analysis is analogous – Plaintiff did not disclose until the opposing party raised the possibility that if he did not do so, his claim might be barred by estoppel. *Cf. Newman*, 751 F. App'x at 814-15 ("Although it is true that Newman eventually corrected his omissions, he did so only after those omissions had been brought to the attention of the district and bankruptcy courts by other parties."); *White*, 617 F.3d at 480 ("the timing of [the] effort is also significant"; "efforts to correct an omission that came before the Defendants filed their motion to dismiss are more

---

5. Plaintiff had an initial consultation with his counsel in June 2018 (Plaintiff Depo., Doc. 43-1, at 174; Ex. 22 to Plaintiff Depo, Doc. 42-12, at 149), but did not officially retain counsel until January 2019 (Plaintiff Decl., Doc. 43-4, at ¶¶ 14-15).

important than efforts that came after the Defendants filed their motion to dismiss"); *see also Wehbe*, 2020 WL 7626784, at *5 ("And while Plaintiff claims that he was unaware that his bankruptcy matter had any relation to this suit, he has no explanation as to why he waited *three* months after Defendant had brought his omission to his attention to attempt to notify the bankruptcy court.") (footnote omitted).

Finally, Plaintiff's testimony he was unaware he needed to disclose the claim is not determinative. *Scisney*, 2015 WL 7758542, at *7 ("Though other plaintiffs have argued that they were unaware of their duties or did not understand the questions on the personal property schedules, '[i]t does not appear that any court has accepted ignorance of the law as an excuse for a party's failure to comply with the requirement of full disclosure.'") (quoting *Harrah v. DSW, Inc.*, 852 F. Supp. 2d 900, 907 (N.D. Ohio 2012) (collecting cases)).

The Court therefore finds that, under prevailing Sixth Circuit caselaw, Plaintiff has not established an absence of bad faith related to his failure to disclose this claim in his bankruptcy proceedings. *White*, 617 F.3d at 478; *Finney*, 562 B.R. at 918. As such, judicial estoppel applies to bar Plaintiff's FMLA claim, and summary judgment is appropriate.

## Conclusion

For the foregoing reasons, good cause appearing, it is hereby

ORDERED that Plaintiff's Motion for Leave to File a Sur-Reply (Doc. 45) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Defendant FCA US, LLC's Motion for Summary Judgment (Doc. 43) be, and the same hereby is, GRANTED.

    s/ *James R. Knepp II*
    UNITED STATES DISTRICT JUDGE